# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# DEL RIO DIVISION

| | | |
|---|---|---|
| **MARIO OCHOA** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 2:20-cv-00038** |
| | § | |
| **COCA-COLA SOUTHWEST** | § | |
| **BEVERAGES, LLC** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **MARIO OCHOA**, hereinafter referred to as "Plaintiff," or "Mr. Ochoa," and files this Plaintiff's Original Complaint, complaining of **COCA-COLA SOUTHWEST BEVERAGES, LLC,** hereinafter referred to as "Defendant," or "CCSWB". Mr. Ochoa alleges violations of Americans with Disabilities Act of 1990 (ADA) as Amended and the Family and Medical Leave Act (FMLA).   For causes of action, Mr. Ochoa would show this Court as follows:

## I.
## PARTIES

1. Plaintiff **MARIO OCHOA** is a resident of Val Verde County, Texas.

2. Defendant **COCA-COLA SOUTHWEST BEVERAGES, LLC** is a Domestic Limited Partnership doing business in Val Verde County, Texas, which may be served with process by the clerk of the court by certified mail, return receipt requested by serving Defendant's registered agent: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street Austin, TX 78701-3218.   A waiver of service has been requested.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction to hear the merits of Ochoa's claims under 28 U.S.C. §1331 as they arise under federal statutes, specifically the Rehabilitation Act, Americans with Disabilities Act as amended, and the Family and Medical Leave Act.

4. All the acts alleged herein occurred in Val Verde County, Texas.

5. Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

6. At the time of filing, damages are within the jurisdictional limits of the court.

## III.
## MISNOMER / MISIDENTIFICATION

7. In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTS

8. Mario Ochoa was hired by Coca-Cola Southwest Beverages LLC on or about October 4, 2016 as a driver/merchandiser.

9. Mr. Ochoa was responsible for delivering Coca-Cola products to customers, invoicing and collecting money owed from the customers, retrieving company property from customers and ensuring that company policies and regulations were followed.

10. Mr. Ochoa was involved in a severe vehicle accident on September 20, 2019, while he was on the job. Mr. Ochoa was taken by ambulance to Val Verde Regional Medical Center in Del Rio, Texas.

11. Following the accident, Mr. Ochoa contacted his wife Diana Sanchez and informed her that he had been involved in the accident. Ms. Sanchez went to see Mr. Ochoa in the hospital.

12. Mr. Ochoa's boss Robby Centilli called Ms. Sanchez after the accident and asked about Mr. Ochoa's condition. He told Ms. Sanchez that he had heard that Mr. Ochoa had died in the accident.

13. Eventually Mr. Centilli arrived at the hospital and spoke with Mr. Ochoa. He told Mr. Ochoa about the rumors that he had died in the accident.

14. Ms. Sanchez contacted Mr. Centilli by text message after the accident to ask about insurance coverage of Mr. Ochoa's medical treatment. Centilli informed them that medication would be covered and asked for images of the records showing Mr. Ochoa's diagnosis to help speed up the insurance process.

15. Mr. Ochoa had sustained injuries to his head, neck, back, left shoulder, and arm.

16. Mr. Centilli told Mr. Ochoa and Ms. Sanchez that Mr. Ochoa needed to see Dr. Jaime Gutierrez at South Texas urgent Care Clinic who was approved by the insurance company. Mr. Centilli also asked if Mr. Ochoa had been cited by DPS and was informed that he had not been cited.

17. Mr. Ochoa was in a great deal of pain following his release from the hospital and had difficulty getting out of bed without assistance. He also had severe swelling in the left side of the head.

18. Mr. Ochoa saw Dr. Gutierrez on September 20, 2019 after he was released from the hospital. Dr. Gutierrez prepared a Texas Worker's Compensation Work Status Report completely restricting Mr. Ochoa from any work from September 20, 2019 to October 4, 2019.

19. Mr. Ochoa next saw Dr. Gutierrez on September 25, and the no-work restriction was extended to October 10, 2019.

20. Mr. Ochoa had another follow-up visit with Dr. Gutierrez on October 2, 2019, and the doctor prepared two Worker's Compensation Work Status Reports. One stating that the no-work restrictions were extended to October 30, 2019, and a second allowing him to return to work on October 7, 2019 with restrictions to the major life activities of pushing/pulling, climbing stairs/ladders, grasping/squeezing, reaching, overhead reaching, use of the left arm, and carrying objects heavier than 5 pounds. Additionally, Mr. Ochoa was restricted to "office duty only" during the October 7 to October 30, 2019 time period.

21. Mr. Ochoa was given the first Work Status Report during the October 2 doctor visit. Mr. Ochoa and his wife were told by the doctor that based on the MRI results, it was likely that Mr. Ochoa would need surgery on his shoulder.

22. On October 3, 2019, Mr. Ochoa was contacted by Dr. Gutierrez's office and was informed that there had been a change to his work status and that CCSWB's Human Resources Department had approved Mr. Ochoa's return to work starting Monday October 7, 2019. This lead to the second Worker's Compensation Work Status Report dated October 2, 2019.

23. Mr. Ochoa returned to work on October 7, 2019, in the light duty office work capacity despite being in severe pain.

24. A meeting about company insurance was held on October 15, 2019. Mr. Centilli, Mr. Ochoa, and the other employees were at the meeting. During the meeting different insurance plans were discussed and Mr. Centilli gave examples of why the company's health insurance premiums were rising. He told the employees that as a company they covered each other's

4

medical bills and that when one employee would go to the emergency room everyone's rates would go up.   Mr. Centilli also pointed Mr. Ochoa and his accident out as an example of something that makes rates go up and told the employees to avoid going to the ER if possible.

25.	Mr. Ochoa's pain level continued to increase during the time he was working light duty.  On October 16, 2019, Mr. Ochoa's pain level was so high that he was unable to get out of bed and his wife contacted Mr. Centilli and told him that Mr. Ochoa was in too much pain to go to work.   She asked Centilli what Mr. Ochoa needed to do to be allowed to stay home and he told her that she needed to contact Raquel Rivera.

26.	Later that day Ms. Sanchez was able to contact Ms. Rivera and ask about FMLA and other options.   Ms. Sanchez wanted to know what options were available to help Mr. Ochoa get rest after the accident and avoid further injury, but she did not get guidance from either Mr. Centilli or Ms. Rivera.

27.	On October 18, 2019, Mr. Ochoa was called in to a meeting with Centilli and was told that he was being terminated for a "Class C preventable measure."

28.	Mr. Ochoa returned to Dr. Gutierrez on October 30, 2019, and he was restricted from all work until December 11, 2019.

29.	There being no legitimate reason otherwise, Mr. Ochoa contends that he was terminated for seeking reasonable accommodations under the Americans with Disabilities Act and in retaliation for seeking benefits under the Family and Medical Leave Act.

## V.
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

30.	Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*

31. Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

32. Defendant employed, and continues to employ, fifty or more persons at, or within a seventy-five (75) mile radius of, the location where Plaintiff worked. Thus it is believed Defendant was covered by the FMLA.

33. During the time that Plaintiff was employed by Defendant, he was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

34. While Plaintiff was employed by Defendant, Plaintiff had an illness or medical condition that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11). Plaintiff was entitled to medical leave for his serious health condition as provided for in the FMLA (in 29 U.S.C. § 2612(a)(1)(D)).

35. Plaintiff sustained an on the job injury and contacted his employer to seek leave because of his severe pain level and limitations caused by his injuries.

36. Defendant retaliated against Plaintiff for requesting this medical leave to care for his serious health condition by terminating him only two days after he requested leave.

37. As a result of Defendant's violations of the FMLA, Plaintiff has suffered actual damages in the form of lost income and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

## VI.
## DISABILITY DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

38. The evidence will show that:

> (1) Plaintiff was disabled (actually disabled and/or "regarded as" or "perceived as" disabled due to his disabilities) specifically Plaintiff had injuries to his

6

head, neck, back, left shoulder, and arm; These conditions impaired the major life activities of pushing/pulling/ climbing, grasping, lifting, and reaching.

(2) Plaintiff was qualified for his position;

(3) Plaintiff suffered an adverse employment action in that he was terminated following his request for accommodation; and,

(4) The circumstances arising raise an inference of disability discrimination.

39. The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

40. Defendant failed to engage in the interactive process. Plaintiff requested accommodations, including benefits under the FMLA. However, instead of engaging in the interactive process and discussing accommodation with Plaintiff as Defendant is obligated to under the law, Defendant fired Plaintiff.

## VII.
## RESPONDEAT SUPERIOR

41. Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant and were at all times acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## VIII.
## DAMAGES

42. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, he is entitled to recover at least the following legal damages:

   a. Lost wages, past and future;

   b. Compensatory Damages, including Mental Anguish, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life suffered in the past, and which, in all reasonable probability, which will be suffered in the future;

   c. Pecuniary losses; and punitive damages

   d. Reasonable attorney fees, expert fees and costs.

   e. Based upon the above enumerated damages, the Plaintiff pleads for actual damages for the above damage elements in an amount the jury deems reasonable.

## IX.
## ADMINISTRATIVE FILINGS

43. Plaintiff filed his original verified complaint with the Equal Employment Opportunity Commission alleging that the Defendant had committed and unlawful employment action against Plaintiff.

44. Thereafter, Plaintiff received a "Notice of Suit" from the EEOC on both charges, giving Plaintiff notice of his right to sue Defendant within 90 days of its receipt, attached hereto as **Exhibit "A"**.   Plaintiff has timely filed this Plaintiff's Original Complaint.

## X.
## ATTORNEY FEES

45. Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

   a. Preparation and trial of the claim, in an amount the jury deems reasonable;

   b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

   c. An appeal to the Court of Appeals, in an amount the jury deems reasonable;

   d. Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees in the event that application for Writ of Error is granted, in an amount the jury deems reasonable; and

   e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XI.
## JURY DEMAND

46. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## XII.
## PRAYER FOR RELIEF

WHEREFORE, Mario Ochoa requests that Coca-Cola Southwest Beverages LLC, acting by, be cited to appear and answer, and that on final trial, Ochoa have judgment against CCSWB as follows:

1. judgment against CCSWB for Ochoa's actual damages, including lost wages and benefits (both front and back pay);

2. judgment against CCSWB for compensatory damages in the maximum amount allowed by law and for punitive damages;

3. pre-judgment and post-judgment interest at the maximum allowed by law;

4. costs of suit, including attorneys' fees; and

5. Such other and further relief, both at law and in equity, to which Ochoa may be justly entitled.

        **Respectfully Submitted,**

        **PONCIO LAW OFFICES**
        **A Professional Corporation**
        **5410 Fredericksburg Road, Suite 109**
        **San Antonio, Texas 78229-3550**
        **Telephone: (210) 212-7979**
        **Facsimile: (210) 212-5880**

        **BY:** */s/ Alan Braun*

          **ADAM PONCIO**
          STATE BAR NO. 16109800
          **ALAN BRAUN**
          STATE BAR NO. 24054488

          **ATTORNEYS FOR PLAINTIFF**

11